UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| IRMA FRAUSTO, individually and on behalf of all others similarly situated, | Case No. 18-cv-01983-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |
| BANK OF AMERICA, NATIONAL ASSOCIATION, | Re: ECF No. 99 |
| Defendant. | |

## INTRODUCTION

In this putative class action, named plaintiff Irma Frausto sued her former employer, Bank of America, for state-law wage-and-hour violations, raising six class claims and one representative claim under California's Private Attorneys General Act ("PAGA"): (1) failure to calculate overtime wages at the correct rate by not including certain bonuses (claim one); (2) failure to provide meal breaks (claim two); (3) failure to provide rest breaks (claim three); (4) failure to pay final wages on time (claim four); (5) failure to provide accurate wage-and-hour statements (claim five); (6) unfair business practices in violation of California's Unfair Competition Law ("UCL") (claim six); and (7) a PAGA claim for civil penalties predicated on the overtime and meal-and-rest

breaks claim (claim seven).[1] Bank of America moved for summary judgment on the following grounds: (1) it did not err by excluding discretionary bonuses from the wage rate (claim one) because they are not part of regular pay; (2) Bank of America's meal-and-rest break policy complied with the law, and the plaintiff cannot show that she was forced to forego the breaks (claims two and three); (3) the plaintiff has no standing to pursue waiting-time penalties (claim four) because Bank of America paid her for penalties on her late final paycheck, the claim is predicated on her defective claims one through three, and she has not provided any evidence showing Bank of America willfully failed to pay her wages on time; (4) her claim for wage-statement penalties (claim five) fails because it is predicated on the overtime and meal-and-rest breaks claims, she suffered no cognizable injury, the statements were accurate, and she cannot show Bank of America knowingly and intentionally failed to provide accurate wage statements; and (5) the UCL and PAGA claims (claims six and seven) fail because they are predicated on the overtime and meal-and-rest breaks claims.[2]

The court grants Bank of America's motion for summary judgment on claim one because the bonuses were discretionary (and there are no disputes of material fact to support a contrary conclusion) and on claims four through seven to the extent that they are predicated on claim one. The court otherwise denies the summary-judgment motion.

**STATEMENT**

**1. Ms. Frausto's Job at Bank of America**

Ms. Frausto worked at Bank of America as a Treasury Services Advisor from September 1999 until August 11, 2017, when Bank of America terminated her.[3] She spent most of her day fielding

---

[1] First Amended Complaint ("FAC") – ECF No. 24 at 15–24 (¶¶ 32–84). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents

[2] Mot. – ECF No. 99 at 12–13.

[3] Frausto Dep., Ex. A to Kim Decl. – ECF No. 99-3 at 4–5 (pp. 26:17–27:9), 6–7 (pp. 29:21–30:21), 55 (p. 219:13–16).

inbound calls from Bank of America's commercial clients, financial centers, and other business partners to verify wires, provide the status of cash stored in vaults, and verify checking, savings, and credit-card accounts.[4]

## 2. The Global Recognition Program

Bank of America launched the Global Recognition Program in 2010 as a way for employees to acknowledge their co-workers' achievements.[5] Under the Global Recognition Program, employees nominated other employees to receive "Recognition Points" for achievements reflecting Bank of America's "core values."[6] Employees could redeem Recognition Points through a third-party vendor's website for merchandise and $100 gifts cards but could not redeem the points for cash.[7] For internal accounting and tax purposes, Bank of America assigned each point a cash value of five cents and reported the value of the points on employee-wage statements as imputed income.[8]

A nominating party's decision to submit a nomination for a Global Recognition Program award for a co-worker was voluntary and "within the complete discretion of the nominating party."[9] There were different levels of Global Recognition Program awards, each with a different number of Recognition Points.[10] For example, the lowest-level award was a "High Five" award, which was worth 100 Recognition Points, and the highest-level award was the "Diamond" award, which was worth 10,000 Recognition Points.[11] When a nominating party submitted an award, it was "expected to assess the impact, value[,] and effort of the achievement being recognized and

---

[4] *Id.* at 8–10 (pp. 42:6–44:23).

[5] Oxrider Decl. – ECF No. 99-2 at 2 (¶¶ 4–5); Global Recognition Program Launch Announcement, Ex. A to Oxrider Decl. – ECF No. 99-2 at 5.

[6] Oxrider Decl. – ECF No. 99-2 at 2 (¶ 5).

[7] *Id* at 2 (¶ 5), 3 (¶ 11); Frausto Dep., Ex. A to Kim Decl. – ECF No. 99-3 at 44–45 (pp. 202:13–203:13), 52 (p. 210:12–15).

[8] Oxrider Decl. – ECF No. 99-2 at 3–4 (¶ 11).

[9] *Id.* at 3 (¶ 6).

[10] *Id.* at 3 (¶ 9); Global Recognition Program Awards Frequently Asked Questions, Ex. C to Oxrider Decl. – ECF No. 99-2 at 7.

[11] Oxrider Decl. – ECF No. 99-2 at 3 (¶ 9).

then recommend an appropriate award level.[12] Once an employee nominated a co-worker,

managers reviewed the nomination and had complete discretion to approve or reject a nomination

or to adjust the number of Recognition Points awarded.[13] In some cases, reviewing managers did

not approve nominations that they deemed meritless.[14]

Global Recognition Program awards were not tied to the number of hours worked, the

completion of any defined task, or any performance-based metrics.[15] Ms. Frausto alleges,

however, that her direct manager told her that she would be eligible to receive Recognition Points

if she received four or more customer-satisfaction surveys with a perfect score.[16]

Ms. Frausto received three Global Recognition Program awards on November 8, 2016,

February 10, 2017, and May 2, 2017, ranging from 500 to 2000 points each.[17]

### 3. Meal-and-Rest Breaks

During Ms. Frausto's employment, Bank of America maintained policies that required meal-

and-rest breaks free of all duties and interruptions and required employees to accurately record the

beginning and end times of their meal breaks on their timecards.[18] The relevant policies are listed

below:

**MEAL PERIODS**

California employees who work more than 5 hours are entitled to one meal period
of at least 30 minutes. It should start no later than the beginning of the 5th hour of

---

[12] *Id.*

[13] *Id.* at 3 (¶¶ 7–9); Global Recognition Program Awards Frequently Asked Questions, Ex. C to Oxrider Decl. – ECF No. 99-2 at 7.

[14] Oxrider Decl. – ECF No. 99-2 at 3 (¶ 8).

[15] *Id.* (¶ 10). There are "internal guidelines regarding the nomination and approval process that help promote uniformity and consistency." *Id.*

[16] Frausto Dep., Ex. B to Dart Decl. – ECF No. 102-3 at 43–44 (pp. 199:24–200:10), 45 (p. 201:7–21), 47 (p. 204:10–15), 48–49 (pp. 205:5–206:5), 50 (p. 207:3–12).

[17] Oxrider Decl. – ECF No. 99-2 at 4 (¶ 13); Frausto Dep., Ex. A to Kim Decl. – ECF No. 99-3 at 51 (pp. 209:20–23); Frausto Global Recognition Program Awards List, Ex. E to Dart Decl. – ECF No. 102-8.

[18] Frausto Dep., Ex. A to Kim Decl. – ECF No. 99-3 at 17 (p. 100:12–20), 21–22 (pp. 131:8–132:22), 31 (p. 158:8–11), 33 (p. 161:14–17); Meal & Rest Break Policies, Ex. B to Kim Decl. – ECF No. 99-3 at 66–72.

work. California employees are not entitled to a second meal period unless they have worked over 10 hours in that day.

. . .

Associates who work more than 10 hours but less than 12 hours in a work day may voluntarily waive their second meal period if the employee received his/her first meal period (as required) as long as he/she does not work more than 12 hours that day. If the meal period is waived, the employee must be paid for the time worked. Once 12 hours is exceeded, neither . . . meal period can be waived.

**REST PERIODS**

Rest periods are considered time worked (i.e., employee is compensated and does not clock out for rest periods.)

A 10-minute rest period is required per 4 hours worked or a major fraction thereof (a major fraction thereof of 4 hours is defined as 50% or 2 hours or more).

- To the extent practicable, it should be taken in the middle of the work schedule.

- A rest period is not required for less than 3.5 hours of total daily time.

A second rest period of 10 minutes is required if total daily work time is 6 hours or more. A third rest period of 10 minutes is required if total daily work time is 10 hours or more. Rest periods should be scheduled so they do not immediately precede or follow any meal periods.[19]

Bank of America conducted annual training on its timekeeping and meal-break policies and procedures, and Ms. Frausto completed the training "numerous times."[20]

As a call-center employee, Ms. Frausto was entitled to a 30-minute meal break no later than the end of her fifth hour of work and two 15-minute rest breaks each day.[21] Ms. Frausto's supervisors advised her to log out of the phone system before the start of a scheduled meal or rest break so that she would not receive calls during her scheduled break.[22]

When the system alerted Ms. Frausto that it was time to take her meal or rest break, she could put her phone in "Follow Up State" so that it stopped receiving calls.[23] Approximately four to six

---

[19] Meal & Rest Break Policies, Ex. B to Kim Decl. – ECF No. 99-3 at 66–72.

[20] Mot. – ECF No. 99 at 17 (citing Frausto Dep., Ex. A to Kim Decl. – ECF 99-3 at 16 (p. 98:2–16), 21 (p. 131:5–11)).

[21] Frausto Dep., Ex. A to Kim Decl. – ECF 99-3 at 12 (p. 67:17–24), 13–15 (pp. 68:11–70:3), 21–22 (pp. 131:23–132:22), 33 (p. 134:14–23); Meal & Rest Break Policies, Ex. B to Kim Decl. – ECF No. 99-3 at 66–72.

[22] Frausto Dep., Ex. A to Kim Decl. – ECF 99-3 at 36–37 (pp. 186:14–187:8).

[23] Frausto Dep., Ex. B to Dart Decl. – ECF No. 102-3 at 13 (p. 77:22–24), 27 (p. 155:9–19).

times per week, a technical error prevented Ms. Frausto from placing her phone in "Follow Up State."[24] When this happened, Ms. Frausto was unable to prevent her phone from receiving incoming calls.[25] She had to answer the calls even if she missed a break to do so.[26] Ms. Frausto's managers instructed her to email them whenever she missed a break.[27] The performance metrics that rated her job performance recorded any missed calls as "abandoned calls," which "could result in censure or even termination."[28] The metrics did not identify whether the "abandoned calls" really were calls received when Ms. Frausto was on an official break when the call dropped.[29]

Even when she missed a break, Bank of America required Ms. Frausto to record her meal-and-rest breaks, "regardless of what happened during the day."[30] She was unable to record the time that she worked during meal-and-rest breaks because recording extra time worked required preapproval.[31]

When Ms. Frausto notified her managers that she was missing a break, she was told to "[d]o the best you can[,] it is what it is," and to take a break "when [she] could."[32] Her managers "encouraged [her] to stay on the phone to handle the call volume" and told her that she "couldn't just hang up on the person."[33] In 2017, a "manager of Ms. Frausto's manager" sent an email instructing employees "do not go to break" and "[s]tay on the phone. Don't go to break" to handle

---

[24] *Id.* at 19 (p. 135:6–23).

[25] *Id.* at 19–20 (pp.135:24–136:7).

[26] *Id.* at 16 (p. 118:12–22).

[27] *Id.* at 31 (p. 170:1–13), 39–40 (pp. 190:18–191:18), 41–42 (pp. 195:16–196:6).

[28] *Id.* at 20 (p. 136:2–23), 25 (p. 151:1–25);

[29] Opp. – ECF No. 102 at 12.

[30] Frausto Dep., Ex. B to Dart Decl. – ECF No. 102-3 at 57–58 (pp. 252:14–253:22); Opp. – ECF No. 102 at 11.

[31] Frausto Dep., Ex. B to Dart Decl. – ECF No. 102-3 at 18 (p. 129:17–23), 31 (p. 170:2–13), 32–33 (pp. 172:12–173:9), 39–40 (pp. 190:18–191:18).

[32] *Id.* at 26–27 (pp. 154:1–155:4), 29–31 (pp. 166:9–167:5), 36–39 (pp. 187:18–190:1), 41 (p. 195:8–15), 52–53 (pp. 213:13–214:14).

[33] *Id.* at 36–39 (pp. 187:18–190:1), 54 (p. 215:2–17).

the high-call volume.[34] Ms. Frausto did not skip breaks as a result of this email, but she continued to skip breaks when the computer system did not allow her to stop calls.[35]

Ms. Frausto recorded her meal-and-rest breaks at the beginning of the day after her manager emailed her daily schedule.[36] After Ms. Frausto recorded her time, she could not change her data entry, even if she was unable to take a break.[37] She missed four to six breaks a week.[38]

### 4. Wage Statements

Bank of America paid Ms. Frausto on a biweekly basis and issued her electronic-wage statements for each biweekly pay period.[39] The wage statements accurately listed the hours worked (also reflected on the time cards) and wages paid for the corresponding pay period.[40] The statements did not include amounts that Ms. Frausto alleges are owed for meal-and-rest break premiums and overtime payments.[41]

Bank of America sent Ms. Frausto her final paycheck on August 15, 2017, four days after it terminated her on August 11, 2017, and it included payment for four days' pay attributable to "Penalty Pay."[42]

### 5. Relevant Procedural History

The FAC contains the following class claims and one representative claim under PAGA: (1) claim one charging a failure to pay overtime wages, in violation of the California Labor Code; (2)

---

[34] *Id.* at 21 (p. 137:9–23); Opp. – ECF No. 102 at 12.

[35] Opp. – ECF No. 102 at 12.

[36] Frausto Dep., Ex. B to Dart Decl. – ECF No. 102-3 at 12 (p. 67:5–16), 13 (p. 77:7–16).

[37] *Id.* at 32–34 (p. 172:12–174:9), 39 (p. 190:18–25).

[38] *Id.* at 52 (p. 213:13–25).

[39] *Id.* at 55 (p. 216:4–14); Pay Slips, Ex. D to Dart Decl. – ECF No. 102-7.

[40] Frausto Dep., Ex. A to Kim Decl. – ECF No. 99-3 at 59–60 (pp. 223:12–224:12).

[41] FAC – ECF No. 24 at 16–18 (¶¶ 40–47), 19–20 (¶¶ 55–62).

[42] Frausto Dep., Ex. A to Kim Decl. – ECF No. 99-3 at 56–57 (pp. 220:6–221:9); Drozynski Decl. – ECF No. 99-1 at 2–3 (¶¶ 4–5); Wage Statement, Ex. A to Drozynski Decl. – ECF No. 99-1 at 4.

claim two charging a failure to provide meal breaks, in violation of the California Labor Code; (3)

claim three charging a failure to provide rest breaks, in violation of the California Labor Code; (4)

claim four charging a failure to pay final wages on time, in violation of the California Labor Code;

(5) claim five charging a failure to provide accurate wage-and-hour statements, in violation of the

California Labor Code; (6) claim six charging unfair business practices, in violation of the UCL;

and (7) a PAGA claim for civil penalties predicated on the overtime and meal-and-rest breaks

violations.[43] Bank of America moved for summary judgment on all claims.[44] The court held a

hearing on September 26, 2019.[45]

## STANDARD OF REVIEW

The court must grant a motion for summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material

facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about

a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for

the non-moving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the

basis for the motion, and identifying portions of the pleadings, depositions, answers to

interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party

must either produce evidence negating an essential element of the nonmoving party's claim or

defense or show that the nonmoving party does not have enough evidence of an essential element

to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,

210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

---

[43] FAC – ECF No. 24 at 15–24 (¶¶ 32–84).

[44] Mot. – ECF No. 99.

[45] Minute Entry – ECF No. 112.

2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine*, 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

# ANALYSIS

Bank of America moves for summary judgment on all claims. The court grants the motion for summary judgment on claim one (and on claims four through seven to the extent that they are predicated on claim one) and otherwise denies the motion.

## 1. Claim One: Failure to Pay Overtime Compensation

In claim one, the plaintiff claimed that the wages used to calculate overtime pay necessarily include the Global Recognition Program bonuses.[46] Bank of America moved for summary judgment on the ground that the bonuses are discretionary bonuses.[47] Non-discretionary bonuses are part of the regular rate of pay, 29 C.F.R. § 778.209(a), and discretionary bonuses are not, 29 C.F.R. § 778.211(b). The court grants the motion because the bonuses were discretionary.

---

[46] FAC – ECF No. 24 at 6–8 (¶¶ 15–17).

[47] Mot. – ECF No. 99 at 20–22.

The California Labor Code requires overtime pay for hours worked "in excess of eight hours in one workday and any work in excess of 40 hours in any one work week . . . at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Labor Code § 510(a). California courts have not addressed whether bonus payments — discretionary or not — are part of the "regular rate of pay." *See Marin v. Costco Wholesale Corp.,* 169 Cal. App. 4th 804, 815 (2008). The parties agree that the applicable standard is the Fair Labor Standards Act ("FLSA").[48] It defines how to calculate the rate of pay, including how to account for bonuses.

"Under the FLSA, the 'regular rate' of pay 'at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee,' subject to certain enumerated exceptions." *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1129 (C.D. Cal. 2011) (citing 29 U.S.C. § 207(e)(3)). The burden is on the defendant to establish that its bonus payments fall within one of the exceptions in § 207(e). *Id.* at 1130 (citing *Idaho Sheet Metal Works, Inc. v. Wirtz,* 383 U.S. 190, 209 (1966) (under the FLSA, "the burden of proof respecting exemptions is upon the company").

Section 207(e)(3)(a) excludes from the "regular rate:"

> Sums paid in recognition of services performed during a given period if . . . both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly.

*Id.; see also* DLSE Manual § 49.1.2.4(3) (incorporating text of 29 U.S.C. § 207(e)(3)).

The Department of Labor has interpreted that section to permit an employer to exclude a "discretionary bonus," but not a "promised bonus," from the "regular rate" of pay:

> In order for a bonus to qualify for exclusion as a discretionary bonus under section 7(e)(3)(a)[,] the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the

---

[48] Mot. – ECF No. 99 at 20; Opp. – ECF No. 102 at 14–15. California courts and the DLSE Manual look to FLSA standards to interpret the "regular rate of pay" under California law. *See Advanced–Tech Sec. Servs., Inc. v. Superior Court*, 163 Cal. App. 4th 700, 707 (2008) (California courts look to Department of Labor regulations interpreting the "regular rate" of pay under the FLSA to interpret that term as used in California Labor Code § 510); Division of Labor Standards Enforcement (DLSE) Manual § 49.1.2 ("In not defining the term 'regular rate of pay,' the Industrial Welfare Commission has manifested its intent to adopt the definition of 'regular rate of pay' set out in the [FLSA].").

bonus is paid. The sum, if any, to be paid as a bonus is determined by the employer without prior promise or agreement. The employee has no contract right, express or implied, to any amount. If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it.

. . .

The bonus, to be excluded under section 7(e)(3)(a), must not be paid "pursuant to any prior contract, agreement, or promise." For example, any bonus which is promised to employees upon hiring or which is the result of collective bargaining would not be excluded from the regular rate under this provision of the Act. Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category. They must be included in the regular rate of pay.

29 C.F.R. § 778.211 (2011); *see also* DLSE Manual § 49.1.2.4(3) (incorporating 29 C.F.R. § 778.211).

    Here, there is no genuine issue of material fact: the Global Recognition Program's Recognition Points were discretionary. Bank of America had "discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid." *Id.* Bank of America's managers had a veto power for any nomination, for example.[49] Crediting Ms. Frausto's contention that four or more perfect customer-satisfaction surveys led to a nomination,[50] supervisors had discretion to approve or reject nominations or to adjust the awarded points.[51] The

---

[49] Oxrider Decl. – ECF No. 99-2 at 3 (¶¶ 8–9).

[50] Frausto Dep., Ex. B to Dart Decl. – EFC No. 102-3 at 43–44 (pp. 199:25–200:10) ("Q: [] if you had customer satisfaction surveys in a quarter, you could be considered a candidate to receive a global recognition award? A: Yes Q: [] And you said if you had customer satisfaction surveys. So are you referring to a specific number of surveys or a specific score? A: So a score of ten of four or more by the clients they submitted"); 45 (p. 201:7–11) (Q: "So your knowledge, as far as your eligibility to be a candidate to receive a global recognition award, is based on something that your direct manager told you in a team meeting? A: Yes.").

[51] *Id.* at 49 (p. 206:6–16) ("Q. But simply receiving those ten scores on your customer surveys would not be a guarantee that you would be awarded global recognition points. Is that a fair statement? A. Yes. Q. And was it your understanding that someone would have to management, I think you testified would have to nominate you to be in the running to receive an award under the Global Recognition Program? A. That's my understanding.").

court grants the Bank summary judgment on claim one (and on claims four, six, and seven to the extent that they are predicated on claim one).

### 2. Claims Two and Three: Meal-and-Rest Breaks

In claims two and three, the plaintiff claimed that Bank of America did not allow her to take meal-and-rest breaks.[52] Bank of America moved for summary judgment on the grounds that it complied with the law (by requiring the breaks), and there is no evidence that it forced the plaintiff to miss breaks.[53] Genuine disputes of material fact preclude summary judgment.

#### 2.1 Governing Law

Under California Labor Code § 512:

> An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes
>
> . . .
>
> An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes.

Cal. Labor Code § 512(a).

Section 226.7 prohibits employers from "requir[ing] an employee to work during a meal or rest or recovery period . . . ." Cal. Labor Code § 226.7(b). "If an employer fails to provide an employee a meal or rest or recovery period[,] . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Labor Code § 226.7(c).

"The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted thirty[-]minute break, and does not impede or discourage them from doing so." *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 946 (N.D. Cal. 2016) (citing *Brinker v. Sup. Ct.*, 53

---

[52] FAC – ECF No. 24 at 16–18 (¶¶ 40–47).

[53] Mot. – ECF No. 99 at 8, 22–24.

Cal. App. 4th 1004, 1040 (2012)). "Over and above this, however, an employer is not obligated to police meal breaks and ensure no work is performed during that time." *Id.* (citing *Brinker*, 53 Cal. App. 4th at 1040–41). "Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay under California IWC Wage Order No. 5, subdivision 11(b) and California Labor Code section 226.7(c)." *Id.* "Nor does an employer's knowledge that an employee is working during a meal period, alone, give rise to liability for breach of the employer's obligation to provide the break, although it does require the employer to pay for that time worked. *Id.* (citing *Brinker*, Cal. App. 4th at 1040).

An employer, however, "may not undermine a formal policy of providing meal breaks by pressuring [its] employees to perform their duties in ways that omit breaks." *Id.* (citing *Brinker*, 53 Cal. App. 4th at 1040–41) (recognizing that a "common scheduling policy that made taking breaks extremely difficult would show a violation" of California's meal break laws). "Liability for failure to provide meal breaks and rest breaks is premised on the employer's actions, and not necessarily the employee's actions." *Id.* (citing *Carrasco v. C.H. Robinson Worldwide, Inc.*, No. 1:13–CV–01438–LJO, 2013 WL 6198944, at *9 (E.D. Cal. Nov. 27, 2013) (an employer did not undermine a formal policy of providing meal-and-rest periods where the employee alleged that she forewent meal-and-rest breaks "to be able to timely complete the tasks assigned" by her employer and otherwise feared ridicule, but failed to identify any actions on employer's part that would give rise to liability).

### 2.2 Application

There are fact disputes about whether breaks were available that preclude summary judgment. In part, these include Ms. Frausto's testimony that institutional impediments caused her to miss four to six breaks per week, her reporting the issues to her managers, and their responses to her, such as "do the best that you can" and "it is what it is."[54]

---

[54] Opp. – ECF No. 102 at 19–20 (citing deposition testimony).

A plaintiff must do more than make conclusory allegations that an employer made it impossible to or prevented them from taking breaks. *Reece v. Unitrin Auto and Home Ins. Co.*, No. 5:11–CV–03960–EJD, 2013 WL 245452, at *6 (N.D. Cal. Jan. 22, 2013). And an employee's subjective belief that his employer wanted him to skip breaks does not satisfy the legal standard. *Roberts v. Trimac Transp. Servs. (Western), Inc.*, No. C12–05302–HRL, 2013 WL 4647223, at *4–5 (N.D. Cal. Aug. 28, 2013). But a threat of discipline for missing a break (for example) and a requirement to work during a break, can create a material fact dispute. *Cleveland*, 200 F. Supp. 3d at 946, 951–52 (a plaintiff's need to monitor the temperature of his delivery trucks during his breaks was sufficient for a "reasonable jury [to] conclude from this testimony that . . . [he] was not relieved of all duty.").

As evidence of its compliance with the California Labor Code, Bank of America points to its policies mandating meal-and-rest breaks,[55] training to inform employees of their rights to take meal-and-rest breaks (which Ms. Frausto completed),[56] and Ms. Frausto's testimony that managers enforced these policies and encouraged her to take meal-and-rest breaks.[57] In response, Ms. Frausto cites, among other examples, the number of missed breaks (four to six a week),[58] the impossibility of taking breaks, the institutional response to missed breaks (such as bank managers telling employees to "do the best you can" and "it is what it is"[59]), how missed calls affected her performance metrics,[60] instructions not to miss calls,[61] and an email from Manny Golfe, a "manager of Ms. Frausto's manager," instructing employees "do not go to break" and "[s]tay on the phone. Don't go to break" to handle the high-call volume.[62] Ms. Frausto testified that the Golfe

---

[55] Frausto Dep., Ex. A to Kim Decl. – ECF No. 99-3 at 21–22 (pp. 131:8–132:22), 31 (p. 158:8–11).

[56] *Id.* at 16 (p. 98:2–16), 21 (p. 131:5–7).

[57] *Id.* at 32 (pp. 159:3–6).

[58] Frausto Dep., Ex. B to Dart Decl. – ECF No. 102-3 at 19 (p. 135:16–23), 52 (p. 213:13–25).

[59] *Id.* at 26–27 (pp. 154:4–155:4), 29 (p. 166:9–23), 36 (p. 187:18–21), 41 (p. 195:8–15).

[60] *Id.* at 20 (p. 136:2–17), 25 (p. 151:1–25).

[61] *Id.* at 36–39 (pp. 187:18–190:1), 54 (p. 215:2–8).

[62] *Id.* at 21 (p. 137:9–23).

email was "a big deal" and made her "very upset."[63] Even after the Golfe email, "she continued to skip her breaks when the computer system did not enable her to stop the calls."[64]

There are genuine issues of material fact about whether the Bank denied Ms. Frausto meal-and-rest breaks. The court denies the Bank's motion for summary judgment on claims three and four.

### 3. Claim Four: Failure to Pay Final Wages on Time

In claim four, the plaintiff claimed that Bank of America willfully failed to pay her final wages when it terminated her, in violation of Cal. Labor Code §§ 201–203.[65] Bank of America moved for summary judgment on the grounds that (1) the plaintiff's final paycheck included waiting-time penalties for the four-day gap between her termination and the final payment, which she now concedes were fully paid, and (2) the plaintiff has not produced admissible evidence that Bank of America acted willfully when it did not pay her for meal-and-rest breaks because the Bank had a good-faith dispute as to whether missed meal-and-rest-break premiums were wages earned under the California Labor Code.[66] The court grants the motion in part to the extent that the claim is predicated on the discretionary-bonuses claim (claim one) and the four days of penalties that the Bank paid. The court otherwise denies the motion.

Under the California Labor Code, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Labor Code § 201(a). "If an employer willfully fails to pay, without abatement or deduction, . . . any wages of any employee who is discharged or who quits," the employee's wages continue as a penalty until paid,

---

[63] Frausto Dep., Ex. B to Dart Decl. – ECF No. 102-3 at 21 (p. 137:9–23).

[64] Opp. – ECF No. 102 at 12 (citing Frausto Dep., Ex. B to Dart Decl. – ECF No. 102-3 at 52–53 (pp. 213:13–214:14)). The Bank points out that Ms. Frausto testified that she was never disciplined for missing a call during a scheduled break and did not skip additional breaks due to the Golfe email. Reply – ECF No. 105 at 13.

[65] FAC – ECF No. 24 at 18–19 (¶¶ 48–54).

[66] Mot. – ECF No. 99 at 24–29.

for up to 30 days. Cal. Labor Code § 203(a); *Mamika v. Barka*, 68 Cal. App. 4th 487, 492 (1998); *see McLean v. State of Calif.*, 1 Cal. 5th 615, 619 (2016) (applying rule to employees who retire).

"Willfully" means that the employer intentionally failed or refused to pay a wage obligation. *Baker v. American Horticultural Supply, Inc.*, 186 Cal. App. 4th 1059, 1076 (2010); *see Woods v. Vector Mktg. Corp.*, No. C–14–0264 EMC, 2015 WL 2453202, at *4 (N.D. Cal. May 22, 2015) (citing *Amaral v. Cintas Corp. No. 2,* 163 Cal. App. 4th 1157, 1201 (2008) ("The settled meaning of willful, as used in section 203, is that an employer has intentionally failed or refused to perform an act which was required to be done.")). The term "willful" does not require a plaintiff to show that an employer knew its obligation and then intentionally refused to act. *Baker*, 186 Cal. App. 4th at 1075 ("The knowledge requirement would be difficult to prove and would encourage [employers] to remain ignorant of their obligations" if "willful" were defined to require a knowing and intentional refusal to act). That said, a good-faith defense that wages are due "will preclude imposition of waiting time penalties under Section 203." Cal. Code Regs. Tit. 8, § 13520.

Bank of America contends that it has a good-faith belief that meal-and-rest-period payments under Cal. Labor Code § 226.7 are not "wages earned" under Cal. Labor Code § 203.[67] In support of its argument, it cites *Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1261 (2016). In denying Bank of America's earlier motion to dismiss, the court recognized the Bank's arguments and authorities but followed the weight of authority — including cases in this district — where courts found that premiums for unpaid rest breaks are "wages" entitling plaintiffs to waiting-time penalties. *Frausto v. Bank of America, Nat'l Ass'n*, No. 18-cv-01983-MEJ, 2018 WL 3659251 at *6–7 (N.D. Cal. Aug. 2, 2019); *see also Suarez v. Bank of America Corp.*, No. 18-cv-01202-MEH, 2018 WL 3659302, at *9–10 (N.D. Cal. Aug. 2, 2018) (same). As the court said in its summary-judgment order in the related *Suarez* case, the court does not revisit its earlier decision. *Suarez*, No. 3:18-cv-01202-LB – ECF No, 83 at 6–7. Moreover, as discussed in the last section, there are disputes of fact about whether Bank of America intentionally denied Ms. Frausto her meal-and-rest breaks.

---

[67] Mot. – ECF No. 99 at 28–29; Reply – ECF No. 105 at 17–18.

In sum, the court grants the Bank's motion to the extent that claim four is predicated on the discretionary bonuses and the four days of penalties that the Bank paid. The court otherwise denies the motion.[68]

## 4. Claim Five: Inaccurate Wage Statements

In claim five, the plaintiff claimed that Bank of America did not provide an accurate itemized statement for each pay period that reflected actual hours worked, in violation of Cal. Labor Code § 226.[69] Bank of America moved for summary judgment on the grounds that (1) the plaintiff did not suffer injury, (2) the wage statements were accurate, and (3) there are no issues of material fact that it knowingly and intentionally failed to provide accurate itemized wage statements.[70] The court denies the motion (except it grants it to the extent that the claim is predicated on claim one).

The California Labor Code requires employers to provide to employees — semimonthly or at the time of each payment of wages — "an accurate itemized statement in writing" showing nine specific items, including "the inclusive dates of the pay period for which the employee is paid," gross wages earned, the applicable hourly rate and total hours worked for non-exempt employees, all deductions, and net wages earned. Cal. Labor Code § 226(a). The plaintiff alleges that Bank of America's pay stubs fail to list these items.[71]

If an employer's violation is knowing and intentional, an employee is entitled to damages:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with [section 226](a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars $100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Cal. Labor Code § 226(e)(1).

---

[68] The Bank submitted a new decision, but it does not alter the court's earlier analysis. Notice of New Decisional Authority – ECF No. 114.

[69] FAC – ECF No. 24 at 10 (¶ 21), 19–20 (¶¶ 55–62).

[70] Mot. – ECF No. 99 at 9, 29–35.

[71] FAC – ECF No. 24 at 27 (¶ 56).

Thus, in addition to proving the element that an employer failed to provide an accurate itemized statement, a plaintiff must prove that (1) the employer's failure to provide the statement was knowing and intentional and (2) the employee suffered injury. *Iljas v. Ripley Entm't Inc.*, --- F. Supp. 3d ----, Case No. 18-cv-00136-JST, 2019 WL 3817847, at *5 (N.D. Cal. Aug. 14, 2019) (citing *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1128 (N.D. Cal. 2014)).

### 4.1 Injury

Under the Labor Code,

> (2)(A) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement.
>
> (B) An employee is deemed to suffer injury for purposes of this statute if the employer fails to provide accurate and complete information [for the nine items specified in section 226(a)], and the employee cannot promptly and easily determine from the wage statement alone one or more of the following: [specified items that include the amount of gross wages or net wages paid, specified deductions, and all applicable hourly rates and the corresponding hours worked].
>
> . . .
>
> (C) For purposes of this paragraph, "promptly and easily determine" means a reasonable person would be able to ascertain the information without reference to other documents or information.

Cal. Labor Code § 226(e)(2)(A–C). Only Section 226(e)(2)(B) — a failure to provide accurate information — is at issue here.

Bank of America argues that Ms. Frausto did not suffer injury, which is a necessary element for any claim for damages.[72] Its main reason is that Ms. Frausto has not viewed her wage statements or identified any inaccuracies in them.[73] The relevant deposition testimony is as follows:

> Q. And did you actually go into the system and review your wage statements?
>
> A. Not all the time.
>
> Q. Do you recall doing that at any point in the year prior to your termination?

---

[72] Mot. – ECF No. 99 at 30–32.

[73] *Id.* at 31 (citing Frausto Dep., Ex. A to Kim Decl. – ECF No. 99-3 at 54 (p. 216:15–20), 57–58 (pp. 221:24–222:1), 61 (p. 225:7–11)); Reply – ECF No. 105 at 18–19.

A. I do not.[74]

. . .

Q. Do you remember even looking at your wage statement when you received your final pay?

A. No.[75]

. . .

Q: Have you made any attempts to calculate the amount of wages you are claiming to be owed in this lawsuit at any point since February of 2017?

A: No.

Q: And is it fair to say that you have never discovered any errors on any of your wage statements?

MR. MARQUEZ: Objection. Calls for a legal conclusion.

A: I don't have a way of verifying if it was correct or not correct.[76]

. . .

Q. [] So is it your understanding that the bank has paid you all the wages that you have earned between February of 2014 through the end of your termination?

A: I don't have a way of determining what is owed and what was paid and what was not paid.[77]

Here, the record establishes that the plaintiff reviewed at least some statements but never tried to calculate her lost wages. The issue is whether (as Bank of America contends) this precludes claim five[78] or whether (as the plaintiff contends) other testimony shows other injury.[79]

"'The injury requirement in section [226(e)] cannot be satisfied simply because one of the nine itemized requirements in section [226(a)] is missing from a wage statement." *Ridgeway v. Wal-Mart Stores, Inc.*, No. C 08-05221 SI, 2014 WL 2600326, at *8 (N.D. Cal. June 10, 2014) (quoting *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142–43) (2011)). "By employing the term 'suffering injury,' the statute requires that an employee may not recover for violations of

---

[74] Frausto Dep., Ex. A to Kim Decl. – ECF No. 99-3 at 54 (p. 216:15–20).

[75] *Id.* at 57–58 (pp. 221:24–222:1).

[76] *Id.* at 61 (p. 225:7–18).

[77] Frausto Dep., Ex. D to Suppl. Kim Decl. – ECF No. 105-3 at 67.

[78] Mot. – ECF No. 99 at 30; Reply – ECF No. 105 at 18–19.

[79] Opp. – ECF No. 102 at 28.

section [226(a)] unless he or she demonstrates *an injury* arising from the missing information." *Id.* (quoting *Price*, 192 Cal. App. 4th at 1142–43) (emphasis in *Price*). "Injury under section 226 may include the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay record, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked." *Id.* (quotations omitted). "A 'very modest showing' of injury will suffice for plaintiffs to recover damages." *Id.* (quoting *Jaimez v. DAIOHS USA, Inc.*, 181 Cal. App. 4th 1286, 1306 (2010)).

Bank of America cites *Ridgeway* (and no other case) for the proposition that the plaintiff's failure to try to calculate her lost wages necessarily means it is entitled to summary judgment on claim eight. *Ridgeway* does not compel that conclusion.

*Ridgeway* involved class plaintiffs who were truck drivers for Wal-Mart. *Id.* at *1. They challenged Wal-Mart's practice of paying them "according to Wal-Mart's piece-rate plan." *Id.* at *2. Payment was based on mileage, activity pay (for duties that Wal-Mart deemed compensable), and non-activity pay ("for events at Wal-Mart dispatch and home offices or unplanned events"). *Id.* The plaintiffs alleged that they reported all activities that Wal-Mart considered compensable, but duties including layovers, pre- and post-trip inspections, paperwork, waiting at stores or vendors, and rest breaks were not included as compensable pay. *Id.* Wal-Mart moved for partial summary judgment on the plaintiffs' meal-break, minimum-wage, wage-statement, waiting-time-penalties, and UCL claims. *Id.* The plaintiffs conceded the meal-break claim. *Id.* at *3. The court denied summary judgment on all claims except the wage-statement claim. *Id.* at *3–10.

The issue about the wage-statement claim was whether two (of the 11) plaintiffs suffered injury.[80] *Id.* at *8. Wal-Mart contended that it was entitled to summary judgment because the two plaintiffs admitted that they suffered no injury. *Id.* The two plaintiffs countered that they suffered injury because "Wal-Mart failed to include the requisite information on their wage statements and

---

[80] The motion challenged the claim on the ground of injury only for two plaintiffs, and not nine other plaintiffs. *Ridgeway*, 2014 WL 2600326, at *1, *8 (the statutory-penalties claim of a different plaintiff (one of the nine) was barred by the one-year statute of limitations).

as a result [the two plaintiffs] could not promptly and easily determine from the wage statements alone the total hours worked, piece rates paid, or applicable hourly rates." *Id.* The court rejected the plaintiffs' argument because they did not put in any evidence — in the form of declarations or deposition testimony — to support their argument that the plaintiffs had to "refer to outside documents and mathematical computations to determine if they were paid correctly." *Id.* at *9 (the plaintiffs argued injury in their opposition (in the form of referring to outside documents and making mathematical computations), but "neither plaintiff stated in his declaration or deposition testimony that they were required to 'engage in discovery and mathematical computations to reconstruct time records to determine if they were correctly paid'"). *Id.* at *9 (quoting *Price*, 192 Cal. App. 4th at 1143). The plaintiffs did "not present evidence that [they] suffered the 'type of mathematical injury that requires computations to analyze whether wages paid in fact compensated [plaintiffs] for all hours worked'". *Id.* (quoting *Jaimez*, 181 Cal. App. 4th at 1306) (citation in *Jaimez* omitted).

*Ridgeway* does not compel a similar outcome here. Forcing plaintiffs to make mathematical computations is only one way to show injury. *Id* at *8. That was the injury that the *Ridgeway* plaintiffs asserted, but they lost their claim at summary judgment because they made only arguments (in their opposition) and did not submit any evidence (in the form of declarations or deposition testimony) to support their arguments. *Id.* at *9. Without evidence, the plaintiffs lost because they did not show disputed issues of material fact. *Id.*

The plaintiff here does not assert injury because she was forced to make mathematical computations.[81] Instead, she contends that she had no way of being able to calculate what she was owed.[82] As the *Ridgeway* court held, there are several ways to show injury, including "the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, [and] difficulty and expense involved in reconstructing pay records." *Id.* at *8 (quotations omitted). The court denies the motion for summary judgment.

---

[81] Opp. – ECF No. 102 at 28.

[82] *See id.* (citing the plaintiff's deposition testimony about her inability to calculate what she is owed); *Frausto*, 2018 WL 3659251, at *7 (the plaintiff plausibly pleaded injury).

### 4.2    Accuracy of Wage Statements

Bank of America next contends that under section 226(e), it must report only the wages that it actually pays employees, and it is undisputed that it accurately itemized the wages that it paid the plaintiff.[83] On this record and argument, the court does not revisit the earlier order, which rejected this legal argument.[84]

### 4.3    Knowing and Intentional Violation

Bank of America also moved for summary judgment on the ground that its alleged violations were not "knowing and intentional," which is a necessary element under section 226(e).[85]

> For purposes of this subdivision, a 'knowing and intentional failure' does not include an isolated and unintentional payroll error due to a clerical or inadvertent mistake. In reviewing for compliance with this section, the factfinder may consider as a relevant factor whether the employer, prior to an alleged violation, has adopted and is in compliance with a set of policies, procedures, and practices that comply with this section.

Cal. Labor Code § 226(e)(3); *Willner*, 35 F. Supp. 3d at 1130. As the court has previously stated:

> Thus, '[a] violation exists if the employer knew that facts existed that brought its acts or omissions within the provisions of the statute.' *Ming-Hsiang Kao v. Joy Holiday*, 12 Cal. App. 5th 947, 961 (2017) (quoting *Willner*, 35 F. Supp. 3d at 1131) (brackets omitted). [A] mistake of law . . . is not excused under the statute mandating itemized wage statements.

*Suarez*, 2018 WL 3659302, at *11 (some internal quotation marks omitted).

Bank of America's argument is that it believed that it accurately reported all wages actually paid, and it reasonably believed that section 226.7 meal-and-rest-break premiums were not wages and instead were liquidated damages.[86] On this record and argument, the court does not revisit its earlier decision, which rejected this legal argument.[87]

---

[83] Mot. – ECF No. 99 at 32–33.

[84] *Frausto*, 2018 WL 3659251, at *7–8.

[85] Mot. – ECF No. 99 at 33–35; Reply – ECF No. 105 at 19.

[86] Mot. – ECF No. 99 at 35–35.

[87] *Frausto*, 2018 WL 3659251, at *8.

**5. Claims Six and Seven: UCL and PAGA**

"Liability under the UCL is generally derivative of liability under another statutory violation." *Cleveland*, 200 F. Supp. 3d at 961 (citing *Rubin v. Wal-Mart Stores, Inc.*, 599 F. Supp. 2d 1176, 1179 (N.D. Cal. 2009) (dismissing UCL claims that were derivative of deficient claims for violations under the California Labor Code)). "A PAGA claim 'is a statutory action in which the penalties available are measured by the number of Labor Code violations committed by the employer.'" *Hoyt v. Amazon.com, Inc.*, Case No.19-cv-00218-JSC, 2019 WL 1411222, at *2 (N.D. Cal. Mar. 28, 2019) (citing *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015)).

The court grants the motion in part to the extent that it is predicated on claim one. The court otherwise denies the summary-judgment motion. The plaintiff's UCL and PAGA claims survive to the extent that they are predicated on the meal-and-rest breaks claims.

## CONCLUSION

The court grants Bank of America's motion for summary judgment on claim oneand on claims four through seven to the extent that they are predicated on claim one. The court otherwise denies the motion.

This disposes of ECF No. 99.


**IT IS SO ORDERED.**

Dated: October 31, 2019

_____

LAUREL BEELER
United States Magistrate Judge