Bobby Saadian (SBN 250377)
bobby@wilshirelawfirm.com
Justin F. Marquez (SBN 262417)
justin@wilshirelawfirm.com
Nicol E. Hajjar (SBN 303102)
nicol@wilshirelawfirm.com
Thiago M. Coelho (SBN 324715)
thiago@wilshirelawfirm.com
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

Attorneys for Plaintiffs

[*Additional counsel listed on following page*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IRMA FRAUSTO, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

BANK OF AMERICA, NATIONAL ASSOCIATION, a business entity, form unknown; and DOES 1 through 10, inclusive,

Defendants

ARIANNA SUAREZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BANK OF AMERICA, N.A. and DOES 1 through 100, inclusive,

Defendants

Case No. 3:18-cv-01983-LB (*Frausto*)
Case No. 3:18-cv-01202-LB (*Suarez*)

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: July 6, 2023
Time: 9:30 a.m.
Courtroom: B – 15th Floor (Videoconference)
Judge: Hon. Laurel Beeler

**ILG LEGAL OFFICE, P.C.**
Stephen Noel Ilg (SBN 275599)
Email: silg@ilglegal.com
George L. Lin (SBN 287873)
Email: glin@ilglegal.com
156 S. Spruce Ave., Unit 206A
South San Francisco, CA 94080
Telephone: 415.580.2574
Facsimile: 415.735.3454

Attorneys for Plaintiffs

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

**NOTICE OF MOTION AND MOTION**

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on July 6, 2023, at 9:30 a.m., in Courtroom B, 15th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Irma Frausto and Arianna Suarez will move this Court for entry of an Order certifying a class for settlement purposes pursuant to Fed. R. Civ. Proc. 23(e).

This motion is made on the grounds that the Settlement Agreement, which provides for a total, non-reversionary payment of $1.5 million "is the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval," such that preliminary approval is appropriate. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)). Further, the proposed notice of settlement complies with due process requirements and is the "best notice that is practicable under the circumstances," as it provides Settlement Class Members (as defined below) an opportunity to fully assess the settlement, including Plaintiffs' motion for attorneys' fees and costs, before deciding whether to opt-out or submit objections. Fed. R. Civ. P. 23(c)(2)(B).

This Motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of Justin F. Marquez and exhibits thereto, the records, pleadings, and papers filed in this action, and any other documentary and oral evidence or argument that may be presented at the hearing.

**RELIEF SOUGHT**

Plaintiffs (as defined below) respectfully request that the Court:

1. Preliminarily certify the proposed class for settlement purposes under Rule 23(e) of the Federal Rules of Civil Procedure;

2. Preliminarily appoint Plaintiffs as the Class Representatives for settlement purposes;

3. Preliminarily appoint Wilshire Law Firm, PLC and Ilg Legal Office, P.C. as Class Counsel for settlement purposes;

4. Preliminarily approve the class action settlement based upon the terms set forth in the Stipulation for Leave to File Consolidated Complaint and for Settlement and Release of Class and Representative Action Claims ("Settlement Agreement");

5. Schedule a final fairness hearing to consider final approval of the Settlement, class representative's incentive payments, entry of a proposed final judgment, and Plaintiffs' motion for attorney's fees and costs;

6. Appoint CPT Group as the third-party settlement administrator for administering the settlement, which includes mailing Notice of Class Action Settlement ("Notice"); and

7. Approving the proposed Notice and ordering that it be disseminated to the proposed Settlement Class as provided in the Settlement.

Respectfully submitted,

Dated: June 1, 2023

**WILSHIRE LAW FIRM, PLC**

By: /s/ Justin F. Marquez
Bobby Saadian
Justin F. Marquez
Nicol E. Hajjar
Thiago M. Coelho

**ILG LEGAL OFFICE, P.C.**

Stephen Noel Ilg
George L. Lin

Attorneys for Plaintiffs

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ..... 1
RELIEF SOUGHT ..... 1
TABLE OF CONTENTS ..... i
MEMORANDUM OF POINTS AND AUTHORITIES ..... 1
I. INTRODUCTION ..... 1
II. SUMMARY OF THE LITIGATION HISTORY AND SETTLEMENT ..... 1
A. The Settlement Occurred After Extensive Litigation ..... 1
B. Settlement Negotiations and Agreement ..... 3
C. Key Terms of the Proposed Settlement ..... 4
III. ARGUMENT ..... 7
A. Class Certification is Appropriate for Settlement Purposes ..... 7
1. The Elements Of Rule 23(A) Are Satisfied ..... 8
**a)** Rule 23(a)(1): Numerosity ..... 8
**b)** Rule 23(a)(2): Commonality ..... 8
**c)** Rule 23(a)(3): Typicality ..... 9
**d)** Rule 23(a)(4): Adequacy of Representation ..... 9
2. The Elements of Rule 23(b)(3) Are Satisfied ..... 9
B. The Settlement Is Fair, Reasonable, and Adequate ..... 11
1. The Strength of Plaintiffs' Case ..... 11
2. Risk, Expense, Complexity, and Duration of Further Litigation ..... 12
3. Risk of Maintaining Class Action Status ..... 12
4. Amount Offered in Settlement Given Realistic Value of Claims ..... 13
5. Discovery Completed and the Status of Proceedings ..... 14
6. The Experience and Views of Counsel ..... 14
C. The Settlement Meets the Requirements for Preliminary Approval ..... 15
1. The Settlement is Within the Range of Possible Approval ..... 15

2. The Settlement Resulted from Serious, Informed and Non-Collusive Negotiations. ..... 15

3. The Settlement is Devoid of Obvious Deficiencies ..... 15

**a)** The Settlement terms are fair and reasonable ..... 16

**b)** The Class Representatives will not receive disproportionate payments to those of class members ..... 16

**c)** The Settlement's provisions for attorneys' fees and costs are in the range that is routinely approved ..... 17

**d)** The allocation of $75,000 to the State's share of PAGA penalties effectuates PAGA's purposes ..... 17

D. The Court Should Approve the Proposed Class Notice ..... 18

E. The Court Should Set a Schedule for Final Approval ..... 19

IV. CONCLUSION ..... 20

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......... 10

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) .......... 18

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) .......... 15

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .......... 18

*Elliot v. Spherion Pacific Work, LLC*, 572 F.Supp.2d 1169 (C.D. Cal. 2008) .......... 12

*Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal.5th 858 (2021) .......... 4

*Frausto v. Bank of America, N.A.*, 2019 WL 5626640 (N.D. Cal. Oct. 31, 2019) ("*Frausto II*") .......... 2

*Frausto v. Bank of America, N.A.*, 2020 WL 1290302 (Feb. 27., 2020) ("*Frausto IV*") .......... 3

*Frausto v. Bank of America, N.A.*, 2021 WL 2476902 (Jun. 17, 2021) ("*Frausto V*") .......... 3

*Frausto v. Bank of America, N.A.*, 334 F.R.D. 192 (N.D. Cal. 2019) ("*Frausto III*") .......... 2

*Frausto v. Bank of America, National Association*, 2018 WL 3659251 (N.D. Cal. Aug. 2, 2018) .......... 2, 4

*Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF SHx, 2008 WL5281665 (C.D. Cal. Dec. 15, 2008) .......... 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......... 8, 9, 10, 11

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

*Hightower v. JP Morgan Chase Bank, NA*, No. CV 11-1802 PSG, 2015 WL 9664959 (C.D. Cal. Aug. 4, 2015)....................................... 16

*In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008)............. 15

*In re Hyundai & Kia Fuel Econ. Litig.* ("*Hyundai I*"), 881 F.3d 679 (9th Cir. 2018)......................................................................................... 10

*In re Hyundai & Kia Fuel Econ. Litig.* ("*Hyundai II*"), 926 F.3d 539 (9th Cir. 2019)..................................................................................... 9, 10

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)......................................................................................... 15

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010)......................................................................................... 17

*In re On-Line DVD Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)......................................................................................... 17

*In re Pac. Enter. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)....................................................................................... 14, 17

*In re Portal Software, Inc. Securities Litig.*, No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .................................... 12

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ..................................................................................... 11

*LaFleur v. Med. Mgmt. Int'l, Inc.*, No. EDCV 13–00398–VAP (OPx), 2014 WL 2967475 (C.D. Cal. June 5, 2014) .................. 16

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978)........................................................................................... 9

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012)......................................................................................... 10

*Misra v. Decision One Mortg. Co.*, No. 07-0994 DOC, 2009 WL 4581276 (C.D. Cal. Apr. 13, 2009)......................................... 19

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

*Naranjo v. Spectrum Sec. Servs., Inc.*,
13 Cal.5th 93 (2022) .... 2

*Nat'l Rural Telecomm. Coop. v. DIRECTTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .... 12

*O'Connor v. Uber Technologies, Inc.*,
201 F.Supp.3d 1110 (N.D. Cal. 2016) .... 18

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2003) .... 11

*Singer v. Becton Dickinson & Co.*,
No. 08-821 IEG, 2010 WL 2196104 (S.D. Cal. Jun. 1, 2010) .... 17

*Stanton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .... 7

*Stuart v. Radioshack Corp.*,
No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) .... 17

*Suarez v. Bank of America, N.A.*,
2019 WL5626637 (N.D. Cal. Oct. 31, 2019) .... 2

*Syed v. M-I, LLC*,
No. 1:12-cv-01718-DAD, 2017 WL 714367 (E.D. Cal. Feb. 22, 2017) .... 18

*Thurman v. Bayshore Transit Mgmt., Inc.*,
203 Cal.App.4th 1112 (2012) .... 13

*Viceral v. Mistras Group, Inc.*,
No. 15-cv-02198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) .... 18

*Welling v. Allexy*,
155 F.R.D. 654 (N.D. Cal. 1994) .... 8

*Wright v. Linkus Enter., Inc.*,
259 F.R.D. 468 (E.D. Cal. 2009) .... 19

**STATUTES**

Cal. Labor Code § 203 .... 2

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

Cal. Labor Code § 226 .......... 2
Fed. R. Civ. P. 23 .......... 1
Fed. R. Civ. P. 23(a) .......... 8
Fed. R. Civ. P. 23(a) .......... 7
Fed. R. Civ. P. 23(a)(1) .......... 8
Fed. R. Civ. P. 23(a)(2) .......... 8
Fed. R. Civ. P. 23(a)(3) .......... 9
Fed. R. Civ. P. 23(a)(4) .......... 9
Fed. R. Civ. P. 23(c)(2)(B) .......... 19
Fed. R. Civ. P. 23(e)(1) .......... 8, 11
Fed. R. Civ. P. 23(e)(2) .......... 19
Fed. R. Civ. P. 23(h) .......... 7

**OTHER AUTHORITIES**

Cal. Civ. Code § 1542 .......... 7
Manual for Complex Litigation (3d ed. 1995) § 30.41 .......... 15

**TREATISES**

3 Conte & Newberg, *Newberg on Class Actions*, section 7.20 (4th ed. 2002) § 11.25 .......... 7
4 Newberg et al., *Newberg on Class Actions* (4th ed. 2013) § 11:24-25 .......... 15
4 Newberg on Class Actions § 13:17 (5th ed.) .......... 8

**REGULATIONS**

8 Cal. Code Regs. § 13520 .......... 12

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Irma Frausto ("Frausto") and Arianna Suarez ("Suarez") (collectively, "Plaintiffs") seek preliminary approval of a proposed $1.5 million non-reversionary, class action settlement of this wage-and-hour case with Defendant Bank of America, N.A. ("Defendant" or "the Bank," and together with Plaintiffs, the "Parties"). The settlement will provide finality to a case that was hotly contested for several years. And, as set forth more fully below, the proposed settlement satisfies all the criteria for settlement approval under Rule 23. The settlement was reached after extensive discovery, investigation, motion practice (including a motion to dismiss, motion for summary judgment, motion for class certification, and motion for reconsideration of the Court' class certification order), two appeals, and four mediations. Jeffrey Krivis, Esq., a mediator highly experienced in wage and hour claims, brokered the deal.

Accordingly, the Parties respectfully request that the Court bring closure to this case by preliminarily approving the proposed settlement, certifying the proposed settlement class, approving the Notice, and scheduling a final approval hearing.

## II. SUMMARY OF THE LITIGATION HISTORY AND SETTLEMENT

### A. The Settlement Occurred After Extensive Litigation

The *Suarez* and *Frausto* actions started in 2018. Suarez originally filed a putative class action in the Superior Court of the State of California for the County of Alameda, Case No. RG18890674, which the Bank subsequently removed to the Northern District of California on February 23, 2018. Frausto originally filed a putative class action in the Superior Court of the State of California for the County of Alameda, Case No. RG18894308, which the Bank subsequently removed to the Northern District of California on March 30, 2018. Suarez and Frausto allege that the Bank violated California's Labor Code and Unfair Competition laws by, among other things, failing to pay minimum wages, failing to pay overtime wages, failing to provide meal periods, failing to authorize and permit rest periods, failing to timely pay final wages at termination, failing to provide accurate itemized wage statements. (Declaration of Justin F. Marquez in Support of Plaintiff's Motion for Preliminary Approval ["Marquez Decl."],

¶ 3; Second Amended Class Action and Representative Complaint.) Plaintiffs also seek civil penalties under Private Attorneys General Act ("PAGA") for the aforementioned Labor Code violations.

The Bank moved to dismiss Frausto's complaint, and on August 2, 2018, the Court granted in part and denied in part the motion. The Court granted the motion as to the claims for meal and rest break violations to the extent they were predicated on a failure to pay premiums at the recalculated regular rate used to compute overtime wages and dismissed the claims on those grounds without leave to amend. *Frausto v. Bank of America, National Association,* 2018 WL 3659251, *5 (N.D. Cal. Aug. 2, 2018) ("there is no legally tenable argument that section 226.7 payments should be paid at the 'regular rate' used for overtime purposes.") ("*Frausto I*").

The Bank moved for summary judgment in both actions. *Frausto v. Bank of America, N.A.*, 2019 WL 5626640 (N.D. Cal. Oct. 31, 2019) ("*Frausto II*"); *Suarez v. Bank of America, N.A.*, 2019 WL5626637 (N.D. Cal. Oct. 31, 2019). In *Frausto II*, the Court held that there are triable issues of fact as to Plaintiffs' Labor Code claims, including her derivative penalty claims. In doing so, the Court also rejected the Bank's argument that meal and rest period premium payments do not qualify as wages for purposes of Labor Code §§ 203 and 226 penalties. *Id.* at *9, *12. This was a sharply contested issue that the California Supreme Court later resolved in favor of the plaintiff in *Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal.5th 93 (2022).

On June 14, 2019, Frausto and Suarez moved together for class certification, seeking to certify a class of "[a]ll persons who worked for [the Bank] in California as a non-exempt employee" and combining all of their remaining claims in that class. (Frausto, Dkt. No. 90.)

In December 2019, the Court granted in part and denied in part Plaintiffs' motion for class certification. *Frausto v. Bank of America, N.A.,* 334 F.R.D. 192 (N.D. Cal. 2019) ("*Frausto III*"). The Court then ordered the Parties to meet and confer and propose revised class definitions consistent with the Court's class certification order. (Frausto, Dkt. No. 128.) However, the Parties were unable to agree upon a class definition.

The Bank appealed the Court's class certification order, and the Ninth Circuit denied the Bank's petition for permission to appeal. *Frausto v. Bank of America, N.A.,* 2020 WL 1290302

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

(Feb. 27., 2020) ("*Frausto IV*").

On April 1, 2021, the Bank filed a motion for reconsideration of the Court's class certification decision. On April 8, 2021, Frausto, along with Suarez, filed a motion for leave to file a motion for reconsideration of the Court's class certification order, requesting that the Court reinstate its original class definition.

On June 17, 2021, the Court granted the Bank's motion, denied Frausto's motion, and issued an order denying class certification. *Frausto v. Bank of America, N.A.,* 2021 WL 2476902 (Jun. 17, 2021) ("*Frausto V*"). In so ruling, the Court found that it was unable to certify a class because there was no evidence of a de facto policy that prevented putative class members from taking meal breaks.

On July 1, 2021, Frausto filed a petition for permission to appeal the Court's class certification denial and denial of her request for reconsideration. The Ninth Circuit denied Frausto's permission to appeal on November 8, 2021.

**B. Settlement Negotiations and Agreement**

There have been four mediations in the *Frausto* action. The first mediation occurred on April 23, 2019, with the Hon. Ronald M. Sabraw (Ret.) of JAMS. There was a second mediation on July 30, 2019, with the Hon. Jamie Jacobs-May (Ret.) of JAMS involving counsel for Frausto and Suarez. There was a third mediation on July 23, 2020, with David Rottman, Esq. The fourth mediation occurred on August 2, 2022, with Jeffrey Krivis, Esq. (Marquez Decl., ¶ 12.)

After extensive litigation, negotiations, and discussions regarding the strengths and weakness of Plaintiffs' claims and Defendant's defenses, the Parties were able to reach an agreement at the fourth mediation regarding the key terms and provisions of the proposed settlement. (*Id.* at ¶ 13.) Class Counsel believes that the proposed settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members in light of all known facts and circumstances, the risk of significant delay, the defenses that could be asserted by Defendant both to certification and on the merits, trial risk, and appellate risk. (*Id.* at ¶ 14.)

. Discovery and investigation revealed that prior to May 2019, the Bank paid meal and rest break premiums at the employee's hourly rate of pay (thereafter it paid meal and rest break

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

premiums at the employee's regular rate of pay). (*Id.* at ¶ 15.) Frausto has always alleged that the Bank should have paid meal period premium wages at the regular rate of pay, not the straight time rate. (*See, e.g.,* Frausto, Dkt. 1-1, p. 10, ¶ 16 [original Complaint]; Frausto, Dkt. 24, ¶ 18 [First Amended Complaint].) In 2019, this Court dismissed this claim, holding that "there is no legally tenable argument that section 226.7 payments should be paid at the 'regular rate' used for overtime purposes." *Frausto I*, 2018 WL 3659251 at *5. The California Supreme Court later provided clarification on this exact point in *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal.5th 858 (2021), and held that "the 'regular rate of compensation' in section 226.7(c) has the same meaning as 'regular rate of pay' in section 510(a) and encompasses not only hourly wages but all nondiscretionary payments for work performed by the employee." *Id.* at 878. The *Ferra* holding applies retroactively. *Id.* at 880. In light of *Ferra*, Plaintiffs contend that they have viable reasons to continue classwide litigation based on the Bank's former practice under *Ferra*.

This settlement resolves the risk attendant with continued litigation. Class Counsel believes that the settlement amount is reasonable in light of the Bank's realistic range of exposure. (Marquez Decl., ¶ 16.) This is a good result for the Class, particularly in light of the Court's denial of class certification. Because of the proposed Settlement, Settlement Class Members will be able to receive timely, guaranteed relief and will avoid the risk of an unfavorable judgment.

**C. <u>Key Terms of the Proposed Settlement</u>**

Under the Settlement Agreement, Defendant will pay One Million Five Hundred Thousand Dollars ($1,500,000) to resolve this litigation ("Gross Settlement Fund"). Marquez Decl., Ex. 1 (Settlement Agreement ["Settlement"]). The key terms include:

1. <u>Settlement Class</u>: "For purposes of this Settlement Agreement only, the 'Settlement Class' or 'Class' consists of Defendant's current and former non-exempt employees who worked for Defendant in California at any time from January 1, 2017 through October 31, 2022. The Settlement Class expressly excludes: (a) any employee who has filed a separate lawsuit (individually and/or as a putative class or representative action) that remains pending as of the date of preliminary approval of this Settlement Agreement asserting the same or similar claims to those

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

alleged in the Lawsuits, including but not limited to the named plaintiffs in *Andrea Sosa v. Bank of America National Association*, 22STCV18958 (Superior Court of California, County of Los Angeles), *David Gentilcore, Gino Palomino, Angela Loukos, and Debra Delgado v. Bank of America, N.A.*, 2:21-cv-01237-TLN-CKD (United States District Court for the Eastern District of California), *Susan Gomez Rivas v. Bank of America, N.A.*, HG21110153 (Superior Court for the State of California, County of Alameda), and *Charlotte Lee v. Bank of America Corporation and Bank of America National Association*, BCV-21-100770 (Superior Court of California, County of Kern); and (b) any employee who has previously released all the Released Claims and Released PAGA Claims … . For any Settlement Class Member who has previously released some but not all of the claims being settled and released in this Settlement Agreement, any pay period covered by each such employee's release agreement(s) shall be excluded from the calculation of any settlement sum payable under this Agreement[.]" Settlement, ¶ 17.

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

2. <u>$1.5 Million Non-Reversionary Settlement Fund:</u> "This settlement is being made on a non-reversionary basis, such that Defendant will pay the entirety of the agreed upon total settlement amount." Settlement, ¶ 23. The Settlement provides for a $1.5 million payment to provide for: "(a) all payments to Settlement Class Members; (b) both employee-side and employer-side payroll taxes associated with the Individual Settlement Payments (as defined below); (c) all costs of administration of the settlement; (d) all attorneys' fees and costs as awarded by the Court; (e) any Enhancement Award (as defined below) to the Class Representatives as awarded by the Court; and (f) the PAGA settlement payments to the LWDA and Aggrieved Employees (as defined below)." Settlement, ¶ 24.

3. <u>Escalator:</u> "In connection with the Parties' settlement discussions, Defendant estimated that the Settlement Class Members' Unreleased Individual Pay Periods totaled 282,645 for the period of February 22, 2017 through April 26, 2022 (the data that was available at the time) which extrapolates to 304,548 Unreleased Individual Pay Periods for the period of January 1, 2017 through the date of mediation (August 2, 2022). In the event that the total number of Unreleased Individual Pay Periods for all Settlement Class Members is greater than 335,003 (which is 10% higher than 304,548), then the GSF will be increased by each full percentage point above 335,003

(i.e., if the total number of Unreleased Individual Pay Periods for all Settlement Class Members is 1% higher than 335,003, then the GSF will be increased by 1%; if the total number of Unreleased Individual Pay Periods for all Settlement Class Members is 1.8% higher than 335,003, then the GSF will be increased by 1%; if the total number of Unreleased Individual Pay Periods for all Settlement Class Members is 2% higher than 335,003, then the GSF will be increased by 2%; etc.)." Settlement, ¶ 52.

4. Distribution of Settlement Payments: Individual Settlement Payments will be calculated as each Settlement Class Member's pro rata share of the Net Settlement Fund ("NSF"), based on the number of pay periods worked by each Settlement Class Member from January 1, 2017 through October 31, 2022. Settlement, ¶ 35. "Settlement Class Members shall not be required to complete a claim form in order to receive their share of the NSF." Settlement, ¶ 34. Each Settlement Class Member who does not opt out of the Settlement and who can be located in the Notice process will automatically be mailed a settlement payment. Settlement, ¶ 40. The Settlement Agreement provides for skip tracing to locate Settlement Class Members whose Notices are returned to the Administrator as undeliverable. Settlement, ¶¶ 33, 44. Settlement Class Members whose Notices are returned as undeliverable, and for whom a more current address cannot be ascertained through skip tracing, will not receive a settlement payment, but will be bound by the settlement. There shall be a 180-day check cashing period for the initial settlement payments, and uncashed funds will be sent to the State of California's Unclaimed Property Fund in the name of the Settlement Class Member who did not cash his or her check. Settlement, at ¶ 43.

5. Releases: The Settlement Class Member release is coextensive with those claims that were or could have been brought in the Consolidated Class and Representative Action Complaint attached to the Settlement Agreement as Exhibit A ("Consolidated Complaint"), all other pleadings filed in the Lawsuits (as defined in the Settlement Agreement), and the notices sent to the LWDA pursuant to PAGA by or on behalf of the Plaintiffs through October 31, 2022. Settlement, ¶¶ 46-47. In addition, in consideration for their Enhancement Awards, the Class Representatives will also provide a general release of claims against Released Parties (as defined

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

in the Settlement Agreement) and a waiver of their rights under Cal. Civ. Code § 1542. Settlement, ¶ 48.

6. Tax Allocation: "Individual Settlement Payments and Enhancement Awards will be allocated 40% for unpaid wages, 40% for statutory or other non-wage damages, and 20% for interest." Settlement, ¶ 41(a).

7. Attorneys' Fees and Costs: The settlement provides that Class Counsel may seek up to 33-1/3% of the $1.5 million gross settlement fund for attorneys' fees, and up to $250,000 for their actual litigation expenses incurred. Settlement, ¶ 30. Any attorneys' fees awarded by the Court shall be divided as follows to Class Counsel: 95% to Wilshire Law Firm, PLC and 5% to ILG Legal Office, P.C. *Id.* Plaintiffs will make a separate motion for attorneys' fees and costs under Rule 23(h) on a later date.

8. Enhancement Awards to Class Representatives: The Settlement provides for an Enhancement Award of $10,000 to each of the Class Representatives, Irma Frausto and Ariana Suarez, in recognition of their efforts on behalf of the Class. Settlement, ¶ 31. If approved, Plaintiffs will receive this amount in addition to their Individual Settlement Payments. *Id.*

9. Settlement Administration Costs: The Parties have agreed to use CPT Group as the settlement administrator, with administration fees capped at $70,000. Settlement, ¶ 33.

## III. ARGUMENT

At preliminary approval, the Court first determines whether a class exists. *Stanton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Then, the Court evaluates whether the settlement is within the "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered. *See, generally*, 3 Conte & Newberg, *Newberg on Class Actions*, section 7.20 (4th ed. 2002) § 11.25.

The Settlement here meets all the requirements for preliminary approval.

### A. Class Certification is Appropriate for Settlement Purposes

When considering a request for certification of a settlement class for settlement purposes, the Court must first determine "whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1)

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

At this stage, the Court only needs to make a preliminary determination as to the appropriateness of class certification for settlement purposes, not trial. In 2018, Congress changed Rule 23 by authorizing a court to send notice of a proposed settlement to the class if the parties have demonstrated that it is "likely" the court will be able to approve the settlement and "certify the class for purposes of judgment on the proposal" after a notice and objection period. Fed. R. Civ. P. 23(e)(1); 4 Newberg on Class Actions § 13:17 (5th ed.). The 2018 Advisory Committee Notes further explain:

> if a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class. Although ***the standards for certification differ for settlement and litigation purposes***, the court cannot make the decision regarding the prospects for certification without a suitable basis in the record. ***The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement.***

Fed. R. Civ. P. 23(e)(1) advisory committee's notes to 2018 amendment (emphasis added).

**1. The Elements Of Rule 23(A) Are Satisfied**

**a)** *Rule 23(a)(1): Numerosity*

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be "impracticable." *See* Fed. R. Civ. P. 23(a)(1). Numerosity is satisfied with as few as 50-60 class members. *See Welling v. Allexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994). Here, numerosity is satisfied because there are approximately 15,000 Settlement Class Members – all of whom are identifiable from Defendant's records. (Marquez Decl., ¶ 23.)

**b)** *Rule 23(a)(2): Commonality*

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is permissively construed by the Ninth Circuit such that the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. Plaintiffs meet the criteria of Rule 23(a)(2) because the Settlement Class

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

Members' claims turn upon answers to overarching common questions regarding Defendant's policies and procedures that are capable of class-wide resolution for settlement purposes, including whether Defendant had legally compliant policies and practices to correctly pay all meal and rest period premium wages owed to Settlement Class Members.

**c)** *Rule 23(a)(3): Typicality*

Plaintiffs must establish that the "claims or defense of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This is a permissive standard that is met so long as the representative claims "are reasonably coextensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Here, the named Plaintiffs were subject to the same policies that were challenged in the Second Amended Complaint, the Consolidated Complaint, and prior pleadings.

**d)** *Rule 23(a)(4): Adequacy of Representation*

Rule 23 also requires that "the representative parties fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this element, Plaintiffs must establish that: (1) the class representatives do not have a conflict of interest; and (2) class counsel will adequately represent the interests of the class. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, there is no conflict of interest between the Class Representatives and the proposed settlement class. Furthermore, Plaintiffs and Class Counsel are well qualified and willing to vigorously prosecute the interests of the Class. Indeed, Class Counsel are well-regarded and accomplished attorneys who are qualified and experienced in wage-and-hour class action litigation. (*See* Marquez Decl., ¶¶ 39-47.) Therefore, the adequacy requirement is satisfied.

**2. The Elements of Rule 23(b)(3) Are Satisfied**

In the Ninth Circuit, the general rule is that predominance is readily satisfied in the settlement context. *In re Hyundai & Kia Fuel Econ. Litig.* ("*Hyundai II*"), 926 F.3d 539 (9th Cir. 2019). This legal principle is set forth in detail in *Hyundai II*.

In *Hyundai II*, a putative class of consumers sued the automaker Hyundai under California consumer-protection law, among other claims, alleging that Hyundai "misled consumers

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

throughout the United States by advertising inflated fuel economy standards" in particular vehicles. *Id*. at 553. The district court considered class certification for trial and for settlement. At first the court indicated that it was likely to deny class certification for trial. *In re Hyundai & Kia Fuel Econ. Litig.* ("*Hyundai I*"), 881 F.3d 679, 692-93 (9th Cir. 2018) (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590-92 (9th Cir. 2012)). Later, when asked to certify a class for settlement purposes, the district court determined that "such an [extensive choice-of-law] analysis," as *Mazza* required, "was not warranted in the settlement context." *Id*. at 700. Instead, consistent with *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), the district court held that common questions, such as "[w]hether the fuel economy statements were in fact accurate" and "whether defendants knew that their fuel economy statements were false or misleading," predominated. *Id*. at 708 (Nguyen, J., dissenting) (alteration in original).

The Ninth Circuit reviewed the decision and a three-judge panel relied on *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) to reverse on appeal. *Id*. at 702-03 (majority opinion). The panel reasoned that, "[i]n failing to apply California choice of law rules, the district court committed a legal error" because, "[a]s explained in *Mazza*, the district court was required to apply California's choice of law rules." *Hyundai I,* 881 F.3d at 702. The distinction between certifying a class for trial or settlement, the panel concluded, was immaterial. *Id*. at 702-03.

An *en banc* panel of the Ninth Circuit then reversed that decision after a rehearing. The *en banc* panel clarified that "[t]he criteria for class certification are applied differently in litigation classes and settlement classes." *Hyundai II*, 926 F.3d at 556. In the settlement context, a district court assessing predominance "need not inquire whether the case, if tried, would present intractable management problems." *Id*. at 558 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Reaffirming *Hanlon*, the *en banc* panel explained that common issues like whether the fuel economy statements were inaccurate and whether the automakers knew about the inaccuracy were the sort of "common course of conduct by [a] defendant" that can establish predominance. *Id*. at 559.

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

Certification of a class for settlement purposes here is consistent with *Hyundai II* because, again, certification is not being sought in the context of trial and, as discussed below, there are many common issues among the class.

**B. The Settlement Is Fair, Reasonable, and Adequate**

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Hanlon*, 150 F.3d at 1027 (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement). This policy guides the Court in determining whether a settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1).

In determining whether a settlement is "fair, reasonable, and adequate", this Court may consider the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2003). Plaintiffs address each relevant factor below.[1]

**1. The Strength of Plaintiffs' Case**

Although Plaintiffs steadfastly maintain that their claims are meritorious, Plaintiffs acknowledge that Defendant possessed legitimate defenses to liability and certification. Defendant already successfully defeated Plaintiffs' motion for class certification once, and could again successfully defeat class certification on the grounds that individual issues predominated over the common issues due to the variation in harm possibly suffered by putative class members. Second, even if Plaintiff prevailed at certification, Defendant could have

---

[1] Because there are no government participants in the Lawsuits, Plaintiffs have omitted the seventh factor from discussion. Should the Court grant preliminary approval of the proposed settlement such that notice is given to the Settlement Class Members, Plaintiffs will address the eighth factor in their motion for final approval.

successfully asserted defenses to Plaintiffs' wage statement and waiting time penalties claims. For example, Defendant possessed strong defenses to these derivative claims, since it can argue a "good-faith" dispute that any wages were due, thereby precluding the imposition of penalties. *See* 8 Cal. Code Regs. § 13520 (a "good-faith" dispute exists to waiting time penalties "when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist."); *see also Naranjo v. Spectrum Sec. Servs., Inc.*, 88 Cal.App.5th 937, 951 (2023) (applying a "willfulness" standard to the imposition of wage statement penalties under Labor Code § 226).

Moreover, because Plaintiffs' claims for civil penalties under PAGA were wholly derivative of the underlying Labor Code claims, Defendant could have successfully defeated or minimized Plaintiffs' PAGA claims if other claims were to fail. *See, e.g., Elliot v. Spherion Pacific Work, LLC*, 572 F.Supp.2d 1169, 1181-82 (C.D. Cal. 2008) ("Plaintiff's claim under the Private Attorneys General Act is wholly dependent upon her other claims. Because all of Plaintiff's other claims fail as a matter of law, so does her PAGA claim.").

In short, Plaintiffs' ability to certify, and prevail on their claims was far from guaranteed. Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotations omitted). Thus, this factor supports preliminary approval.

**2. Risk, Expense, Complexity, and Duration of Further Litigation**

The Parties have already expended tremendous resources litigating this case. This settlement avoids the risk of future litigation and the accompanying additional expense. *See, e.g., In re Portal Software, Inc. Securities Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").

**3. Risk of Maintaining Class Action Status**

The Court already denied class certification as to Plaintiffs' claims for unpaid work time,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

meal period violations, and rest period violations. Thus, this factor, too, supports preliminary approval of the settlement.

**4. Amount Offered in Settlement Given Realistic Value of Claims.**

As detailed immediately below, the Settlement provides a monetary recovery for the Settlement Class in the face of hotly disputed claims and Defendant prevailing at class certification. Thus, preliminary approval is appropriate.

In response to class certification discovery, Defendant provided Plaintiffs' counsel with randomized timekeeping and payroll records for the putative class members. Plaintiffs' counsel hired an expert to analyze this data and create a damages model. The damages model is based on an estimated 282,645 pay periods worked by putative class members and an average hourly rate of $20.97 per hour. (Marquez Decl. ¶ 23.)

Based on the large class size, assuming Plaintiffs were able to prove all of their claims, Plaintiffs estimate that Defendant's potential liability for failure to pay for all hours worked, failure to provide meal periods, failure to authorize and permit rest periods, and derivative waiting time, wage statement, and PAGA civil penalties to be in the tens of millions of dollars. (Marquez Decl. ¶ 26.) Defendant vigorously disputes Plaintiffs' estimate and denies that any of Plaintiffs' claims have any merit. The Court's denial of class certification means that the realistic potential recovery for these claims is nominal. (*Id.*)

With respect to the failure to pay meal and rest period premium wages correctly claim, Plaintiffs estimate that Defendant's potential maximum liability is $1 million. Plaintiffs' expert found that Settlement Class Members were owed between $150,000 to $1 million in unpaid meal period premium wages under *Ferra.* (*Id.* at ¶ 27.) Derivative wage statement and waiting time penalties would add millions more in exposure, but the unclear nature of the law before *Ferra* means that Defendant has a good-faith defense that its conduct was not willful, thereby negating any potential liability. (*Id.*) The maximum potential PAGA is approximately $28.2 million, but any award of PAGA penalties for this claim would raise Due Process concerns. *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1135 (2012) (affirming trial court's finding that awarding the maximum PAGA penalties would be unjust).

Weighing these factors, Plaintiffs' counsel believes that the $1.5 million settlement amount is fair, reasonable, and adequate. (Marquez Decl. ¶ 28.) The amount compensates Settlement Class Members for Plaintiffs' remaining claim under *Ferra*, while giving them additional compensation for other claims that they would not recover on based on the Court's denial of class certification. (*Id.*)

**5. Discovery Completed and the Status of Proceedings**

The parties engaged in a significant amount of investigation, class-wide discovery, and analysis prior to reaching the proposed settlement. (*Id.* at ¶¶ 3-11, 21.) Defendant responded to Plaintiffs' written discovery, provided extensive information on the company's wage and hour policies and practices, provided the contact information for the Settlement Class Members, produced thousands of pages of relevant documents, and provided three witnesses for depositions. (*Id.* at ¶ 21.) There was significant motion and appellate work, including a motion to dismiss, motions for summary judgment, and a contested motion for class certification. (*Id.*) It was only after the exchange of a substantial amount of data and information that the parties participated in four full-day mediation sessions and ultimately reached this proposed settlement. (*Id.*)

**6. The Experience and Views of Counsel.**

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, Plaintiffs are represented by experienced wage and hour class action counsel who pressed Plaintiffs' claims forward against a large employer who retained the well-regarded firm McGuireWoods LLP, which regularly litigates large, high-stakes cases throughout the country. (*See* Marquez Decl., ¶¶ 39-47.) Therefore, this factor strongly supports preliminary approval. *See, e.g., Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF SHx, 2008 WL5281665, at *9 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

### C. The Settlement Meets the Requirements for Preliminary Approval

At this stage, the Court can grant preliminary approval of the settlement and direct that notice be given if the proposed settlement: (1) falls within the range of possible approval; (2) appears to be the product of serious, informed and non-collusive negotiations; and (3) has no obvious deficiencies. *See* Manual for Complex Litigation (3d ed. 1995) § 30.41; 4 Newberg et al., *Newberg on Class Actions* (4th ed. 2013) § 11:24-25. These criteria are met here.

#### 1. The Settlement is Within the Range of Possible Approval

As detailed above, the proposed settlement reflects a substantial recovery in light of real litigation risks to both merits and certification. Thus, the proposed settlement is within the range of possible approval, such that notice should be provided to the settlement class so that they can consider the settlement. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("the Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate"). The Court will have the opportunity to again assess the reasonableness of the settlement after the Settlement Class has the opportunity to opt-out or object.

#### 2. The Settlement Resulted from Serious, Informed and Non-Collusive Negotiations.

The Settlement is the product of a mediation session with the assistance of a highly experienced mediator Jeffrey Krivis, Esq. *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a collusive settlement), *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.") At all times, the Parties' negotiations were adversarial and non-collusive.

#### 3. The Settlement is Devoid of Obvious Deficiencies

The settlement contains none of the provisions that courts sometimes identify as cause for concern.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

**a)** *The Settlement terms are fair and reasonable*

There are no deficiencies in the terms of the settlement. The settlement provides for a pro rata distribution of the Net Settlement Fund based on each Settlement Class Member's pay periods worked during the class period. In addition, Settlement Class Members will not have to make claims to receive a settlement payment. Each Settlement Class Member who can be located will be mailed a payment automatically. To protect the interests of all Settlement Class Members, the settlement incorporates procedures to ensure that as many Settlement Class Members as possible can be located. Also, the release given by Settlement Class Members is limited to those claims that were or could have been alleged in the Consolidated Complaint, and the other pleadings filed in the Lawsuits (as defined in the Settlement Agreement) and the notices sent to the LWDA pursuant to PAGA by or on behalf of the Plaintiffs.

**b)** *The Class Representatives will not receive disproportionate payments to those of class members*

The Class Representatives will not receive any premium above the amounts received by other Settlement Class Members, but instead will receive settlement shares calculated by the same method. Although the Class Representatives will be eligible to receive an Enhancement Award in addition to their Individual Settlement Payments, the settlement is not contingent on Court approval of the Enhancement Awards. Any amount that is not approved by the Court will be added to the Net Settlement Fund for Settlement Class Member Individual Settlement Payments.

Moreover, the proposed $10,000 incentive awards to each Class Representative is within the range that courts in this circuit routinely approve. *See, e.g.*, *Hightower v. JP Morgan Chase Bank, NA*, No. CV 11-1802 PSG, 2015 WL 9664959, at *12 (C.D. Cal. Aug. 4, 2015) (approving $10,000 incentive awards to each of seven lead plaintiffs in $12 million wage and hour settlement); *LaFleur v. Med. Mgmt. Int'l, Inc.*, No. EDCV 13–00398–VAP (OPx), 2014 WL 2967475, at *8 (C.D. Cal. June 5, 2014) (approving incentive awards of $15,000 each to two class representatives from $535,000 wage and hour class action settlement). The total of $20,000 in a proposed incentive award comprises a mere 1.3% of the gross settlement amount

of $1.5 million, and it is therefore well within the range of reasonableness. *See, e.g.*, *In re On-Line DVD Rental Antitrust Litig.*, 779 F.3d 934, 937-38 (9th Cir. 2015) (approving incentive awards that comprised in the aggregate less than 1% of gross settlement value). Plaintiffs will provide a declaration in support of final approval detailing his active participation and the services he provided to the class.

**c)** *The Settlement's provisions for attorneys' fees and costs are in the range that is routinely approved*

The attorneys' fees and costs provisions of the Settlement are similarly fair and reasonable. The settlement permits Class Counsel to seek attorneys' fees of up to one-third of the gross settlement amount of $1.5 million. A fee award of one-third of the common fund is consistent with fee awards made by federal courts in the Ninth Circuit. *See, e.g., In re Pac. Enter. Sec. Litig.*, 47 F.3d at 378-79 (affirming fee award of one-third of settlement); *Singer v. Becton Dickinson & Co.*, No. 08-821 IEG, 2010 WL 2196104, at *8-9 (S.D. Cal. Jun. 1, 2010) (33.33% of wage and hour settlement "falls within the typical range ... in similar cases"; citing awards of 33.33%-40%); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund in wage-and-hour class action and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits").

Class Counsel will file a separate motion for attorneys' fees and costs pursuant to Federal Rule 23(h) two weeks before the deadline for Settlement Class Members to opt-out or object to afford Settlement Class Members a full opportunity to review and comment on it. *See In re Mercury Interactive Corp. Sec. Litig*., 618 F.3d 988, 991 (9th Cir. 2010).

**d)** *The allocation of $75,000 to the State's share of PAGA penalties effectuates PAGA's purposes*

The allocation of $100,000 to the PAGA claim, which amounts to a $75,000 payment to the LWDA for the State's share of PAGA penalties, is consistent with recent authority regarding the allocation of settlement proceeds to PAGA in large wage and hour class actions. In a combined class action and PAGA settlement of wage and hour claims, "the Court must evaluate

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

the adequacy of compensation to the class as well as the adequacy of the settlement in view of the purposes and policies of PAGA. In doing so, the court may apply a sliding scale. For example, if the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled." *O'Connor v. Uber Technologies, Inc.*, 201 F.Supp.3d 1110, 1134 (N.D. Cal. 2016).

Applying the sliding scale analysis, courts have held that comparable allocations to PAGA penalties in a class action settlement fulfill the purposes of PAGA and warrant approval. *See, e.g., Syed v. M-I, LLC*, No. 1:12-cv-01718-DAD, 2017 WL 714367, at *13 (E.D. Cal. Feb. 22, 2017) (granting preliminary approval of allocation of $100,000 to PAGA penalties from gross settlement of $3.95 million settlement of California wage and hour claims); *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016) (granting preliminary approval of allocation of $20,000 to PAGA penalties from $6 million settlement based on overall quality of settlement balanced against litigation risks).

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

**D. <u>The Court Should Approve the Proposed Class Notice</u>**

Rule 23(c)(2)(B) requires that absent class members receive the "best notice that is practicable under the circumstances." "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations marks and citations omitted). Such notice is reasonable if mailed to each member of a settlement class "who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

The proposed Notice meets all of the requirements. The Notice will be provided in English. The Notice explains in plain and easily understood language: what the case is about; the class definition and claims; the settlement amount and approximate individual amount each Settlement Class Member will receive; the requested amounts to be paid to Class Counsel and as Enhancement Awards to the Class Representatives; the rights of Settlement Class Members to appear through attorneys; the rights of Settlement Class Members to opt-out or object to the Settlement's terms and the process by which they can do so; the binding effect of the Settlement on those who do not

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

request exclusion, including a description of the claims being released; and the particulars of the final fairness hearing. Settlement Class Members whose Notices do not have to be remailed will have 45 days to decide whether to opt out or object to the Settlement. *See* Settlement, Ex. A (Class Notice). For those whose Notices are returned as undeliverable and then remailed to a corrected/forwarding address of a Settlement Class Member with fewer than seventeen (17) calendar days left in the original notice period, then the deadline to opt-out or object will be extended to seventeen (17) calendar days from the date of remailing of the Notice. Settlement, ¶¶ 36, 37.

The Parties' proposed plan for directing notice to the Class is also "the best notice that is practicable under the circumstances." Using last-known addresses provided by Defendant, the Settlement Administrator will send the Notice by First Class U.S. Mail to all Settlement Class Members. Further, the Settlement Administrator will perform skip traces to obtain the correct address of any Settlement Class Members for whom the Notice is returned as undeliverable, and shall attempt re-mailings where new addresses are ascertained.

For these reasons, the Settlement's plan for directing notice to Settlement Class Members satisfies Rule 23(c)(2)(B). *See, e.g., Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468, 475 (E.D. Cal. 2009); *Misra v. Decision One Mortg. Co.*, No. 07-0994 DOC, 2009 WL 4581276, *9 (C.D. Cal. Apr. 13, 2009).

### E. <u>The Court Should Set a Schedule for Final Approval</u>

Because the case meets the requirements for certification of a settlement class and the Settlement meets the requirements for preliminary approval, the Court should direct notice to issue and set a final fairness hearing to decide whether to grant final approval to the Settlement, as well as whether to grant the Class Representative's application for an award of service payments and Class Counsel's motion for attorney's fees and costs. *See* Fed. R. Civ. P. 23(e)(2).

Plaintiffs request that the Court set the Fairness Hearing for November 30, 2023, or the earliest available date thereafter. As reflected in the proposed order submitted herewith, Plaintiffs further request that the Court order the following briefing schedule:

| | |
|---|---|
| Plaintiffs' motion for attorneys' fees and costs | 14 days before the deadline for Settlement Class Members to submit objections to the settlement |
| Plaintiffs' motion for final approval of the settlement and for Class Representative service payments | 35 days before the Final Approval Hearing |
| Defendant's Counsel shall file with the Court a declaration attesting that CAFA Notice has properly been served pursuant to 28 U.S.C. §1715 | 14 days before the Final Approval hearing |
| Reply briefs, if any | 14 days before the Final Approval hearing |

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' counsel respectfully requests that the Court grant preliminary approval of the proposed class action settlement.

Respectfully submitted,

Dated: June 1, 2023

**WILSHIRE LAW FIRM, PLC**

By: /s/ Justin F. Marquez
Bobby Saadian
Justin F. Marquez
Nicol E. Hajjar
Thiago M. Coelho

**ILG LEGAL OFFICE, P.C.**

Stephen Noel Ilg
George L. Lin

Attorneys for Plaintiffs

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137